| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| KENNETH A. MANNING, Trustee, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:12-CV-489-TLS |
| | ) | |
| CECIL ALLEN WATKINS and | ) | Appeal from the United States Bankruptcy |
| DEBRA TABLA WATKINS, Debtors, | ) | Court, Northern District of Indiana, |
| | ) | Honorable J. Philip Klingeberger |
| Appellees. | ) | (Adversary No.: 10-2042) |

## OPINION AND ORDER

This is an appeal of the bankruptcy court's order denying a Complaint for Denial of

Discharge under 11 U.S.C. § 727(a). The Trustee/Appellant, Kenneth A. Manning, filed the

Complaint for Denial of Discharge in adversary proceeding 10-2042. He now argues that the

bankruptcy court clearly erred in finding that the Debtors/Appellees, Cecil Allen Watkins and

Debra Tabla Watkins, did not act with an intent to defraud under § 727(a)(2), did not act

"knowingly and fraudulently" under § 727(a)(4), and did not violate § 727(a)(5).

## STATEMENT OF THE CASE

The Debtors filed a Chapter 7 bankruptcy petition on March 30, 2009, in the United

States Bankruptcy Court for the Northern District of Indiana, Hammond Division. On March 30,

2010, after the bankruptcy court granted the Trustee extensions of time to file objections to the

discharge, the Trustee filed a Complaint Objecting to Discharge; Complaint for Judgment

Against Debtor [ECF No. 8 at 000051–55]. The bankruptcy court conducted a two-day trial

concerning the adversary proceeding on October 6 and 28, 2011. The parties presented closing

arguments on November 29, and thereafter the bankruptcy court took the matter under

advisement. During the first day of trial, the bankruptcy court asked the Trustee to clarify under which provisions of § 727(a) he was proceeding. He stated that he was proceeding only under §§ 727(a)(2), 727(a)(4), and 727(a)(5). (Oct. 5, 2011, Hr'g Tr. 9:10–12, ECF No. 8 at 000102.) On July 6, 2012, the bankruptcy court issued its Memorandum of Decision Concerning Action to Deny Discharge [ECF No. 1-34] along with its Judgment [ECF No. 1-33]. In its forty-one page Memorandum of Decision, the bankruptcy court held that, in spite of multiple omissions and misstatements by the Debtors in their bankruptcy filings, the Debtors lacked the intention to defraud that was required to deny discharge under § 727(a). After the bankruptcy court granted him an extension of time, the Trustee filed his Notice of Appeal [ECF No. 1] in this cause on November 21, 2012.

The Trustee filed his Appellant's Brief [ECF No. 7] and Appendix [ECF No. 8] on January 10, 2013. The Debtors filed their Appellees' Brief [ECF No. 12] and Appendix [ECF No. 13] on February 25. The Trustee filed his Appellant's Reply Brief [ECF No. 14] on March 11. The parties agree that this Court has jurisdiction over the matters raised in this appeal pursuant to 28 U.S.C. § 158(a)(1), and that the issues before the Court are fully briefed and ripe for ruling.

## RELEVANT FACTS

Debtor Cecil Allen Watkins (Allen) operated a real estate business. The business involved many properties and myriad business entities, but the primary entity was called Housing Resource Center, Inc. (HRC). Allen's wife, Debtor Debra Tabla Watkins (Debra), worked as a homemaker, occasionally helping out with cleaning and painting at some of the

properties. Debra was not involved in the day-to-day operation of the real estate business. Debra paid the family's personal, household expenses directly from the HRC bank account. Allen also treated all funds, bank accounts, and assets of HRC and its affiliated entities as his own property. Debra's sister-in-law, Dolly Tabla, worked as the bookkeeper for Allen's real estate business.

Allen and Debra filed for bankruptcy on March 30, 2009. On May 15, they filed Official Schedules A–J and the Statement of Financial Affairs (SOFA). Allen and Debra appeared at the § 341 meeting of creditors on June 16, and, according to the Trustee's testimony, both Allen and Debra testified that they had signed the Schedules and the SOFA, that they had opportunity to read the documents and review them before signing, that the documents were completely filled out before Allen and Debra signed them, and that the documents accurately listed all of Allen and Debra's assets, money, property, income, bills, debts, liabilities, creditors, and financial affairs. (Oct. 28, 2011, Hr'g Tr. 295–96, ECF No. 8-1 at 000393–94.) Allen and Debra also testified at the § 341 meeting that they needed to make changes, amendments, corrections, additions, or alterations to their bankruptcy filings (*id.*), though it is not clear from the record what changes they intended to make at that time.

The Trustee filed a Motion for Turnover of Records on August 6 seeking documents relating to HRC and its affiliated entities. The Debtors filed a Certificate of Compliance with the Motion on August 31 indicating that they had turned over the requested documents. The bankruptcy court did not grant the Motion for Turnover of Records until September 1. On September 17, the Trustee requested an extension of time to file a Complaint to Withhold Discharge; the Debtors did not object and the bankruptcy court granted the extension. On November 16, the Trustee requested a second extension of time to file a Complaint to Withhold

Discharge; the Debtors did object, but, after conducting a hearing, the bankruptcy court again granted the extension, this time until March 30, 2010.

The Trustee sent a letter, dated January 18, 2010, to the attorney for the Debtors, requesting more explanation and information on accounts and assets. The Trustee apparently did not receive a response from the Debtors until March 30—the deadline for the Trustee to file a Complaint to Withhold Discharge.[1] Accordingly, the Trustee filed his Complaint Objecting to Discharge; Complaint for Judgment Against Debtor on March 30, 2010. After discovery, on July 12, 2011, the bankruptcy court set the matter for trial to commence on October 6, 2011. (Adv. Proceeding Docket, ECF No. 8 at 000087.) On September 27, the Debtors filed amended Schedules B and D into the record for the bankruptcy case. (Bankruptcy Docket, ECF No. 8 at 000079.) The Debtors did not file an amended SOFA.

After trial on October 6 and 28, 2011, and closing arguments on November 29, 2011, the bankruptcy court issued its Memorandum of Decision Concerning Action to Deny Discharge on July 6, 2012. Additionally, the Debtors' attorney requested leave to withdraw from the case in December 2011 because of his advancing age and health issues, and the bankruptcy court granted his request to withdraw on January 24, 2012. Successor attorneys for the Debtors filed appearances in July and September 2012.

## CONTROLLING LAW

Title 11, United States Code, §727(a) states in relevant part:

---

[1]The Debtors note that the response from Allen is dated January 28, 2010. (Watkins Letter, ECF No. 8-2 at 000527–32.) The parties agree that at trial they did not resolve the factual issue of when the Trustee's office received Allen's letter of January 28.

The court shall grant the debtor a discharge, unless–

. . .

>> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with the custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed–

>>> (A) property of the debtor, within one year before the date of the filing of the petition; or

>>> (B) property of the estate, after the date of the filing of the petition;

>>> . . .

>> (4) the debtor knowingly and fraudulently, in or in connection with the case–

>>> (A) made a false oath or account;

>>> . . .

>> (5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities.

## THE BANKRUPTCY COURT'S MEMORANDUM OF DECISION

The bankruptcy court began its Memorandum of Decision by reviewing the legal principles applicable to a decision under § 727(a). The court also outlined its view of how bankruptcy policies affect bankruptcy debtors. Specifically, the bankruptcy court noted:

> In the ordinary course of human events, most people simply don't keep extraordinarily detailed financial records, don't organize their financial records or affairs in a particularly effective way, and do things or fail to do things at times which may not conform strictly to concepts of federal tax law or maintaining a Chinese wall between individual finances and the finances of business organizations in which those individuals are involved. Yet, when certain of these individuals become involved in a bankruptcy case, a standard is imposed upon them which departs from the manner in which ordinary people conduct their ordinary financial affairs in everyday life. Suddenly, they are expected to possess every document which bears on any issue involved in their bankruptcy case, and to have carefully orchestrated each of their financial transactions in a manner which conforms strictly to the types of financial planning that would only be done by an estate planner. Similarly, when an individual comes under the bankruptcy microscope—isolated departures from standards associated with absolute candor and absolute adherence to technical legal requirements in structuring or performing transactions become the basis for a determination of denial or revocation of discharge, when in fact most [of]

the population base has engaged in similar conduct but has not had the misfortune of having it analyzed to the nth degree in litigation in bankruptcy.

> . . . Denial of discharge is in particular meant to be an extreme imposition of a sanction, to be imposed upon relatively bad people who have consistently done bad things; not so bad people who have done fairly seriously bad things in certain circumstances; or anyone who has done one really bad thing which permeates and precludes the effective administration of a bankruptcy case. It is not meant to be imposed upon an individual who is lax or careless in the conducting of financial affairs or the keeping of records in relation to them—in other words people whose conduct may fall short of strict technical legal requirements but do not evidence the intent of figuratively thumbing their noses at their creditors, bankruptcy trustees and/or the court.

(Mem. of Decision 17–18, ECF No. 1-34.)

The bankruptcy court then analyzed Debra's status in Allen's real estate business, holding that her testimony was "clear and convincing" (*id.* 20), that she "had no real knowledge of Allen's business affairs or transactions" (*id.* 21), and that her role was that of a "stay at home mom" (*id.* 20). After concluding that Debra did not need to disclose her interest in bank accounts under the plain language of the Schedule B or the SOFA, the bankruptcy court found that the Trustee "failed to establish <u>any</u> ground for denial of Debra's discharge" under §§727(a)(2), 727(a)(4), or 727(a)(5). (*Id.* 22.) The bankruptcy court also noted later in its Memorandum, concerning § 727(a)(4), that "[g]iven the evidence, Allen Watkins is responsible for preparing and certifying to the accuracy of the documents filed in this case—Debra Watkins has been exonerated in this context." (*Id.* 40 n.11.)

Next, the bankruptcy court turned to the Trustee's § 727(a) arguments concerning Allen. For ten pages, the court analyzed various alleged omissions in the Schedules and the SOFA and determined that denial of discharge was inappropriate in each and every instance, either because the documents did not actually require disclosure, or because Allen did not have the requisite intent to defraud. (*Id.* 22–31.) The specific alleged omissions discussed were as follows: Allen's

failure to list his interest in a GMC Suburban that he purchased for the use of his brother and for which his brother made most of the payments; Allen's failure to list the Internal Revenue Service or the Indiana Department of Revenue as secured creditors; Allen's failure to list certain tax refunds; Allen's failure to list an adversary proceeding in a prior Chapter 13 bankruptcy; Allen's listing $1000 per month as a charitable contribution to the Church of Latter Day Saints when in fact the actual monthly contribution was $1100; Allen's failure to list a $600 per month outlay to support his mother; Allen's failure to indicate that Dolly Tabla was the bookkeeper for his business activities; Allen's transfer of funds from one corporate account into another corporate account for the purpose of avoiding an Internal Revenue Service tax levy on his personal finances; and Allen's over-inclusion of properties that he listed as owned in his own name but that were in fact owned by a corporation. The bankruptcy court summarized its findings with an analysis of §§ 727(a)(2) and 727(a)(5), finding that denial of discharge under both of these sections was not appropriate because "the intent element of 11 U.S.C. § 727(a)(2) has not been established with respect to any issue in this case" (*id.* 31–32), and because "the record fails to establish any loss of assets or deficiency of assets to meet the debtors' liabilities which has not been satisfactorily explained" (*id.* 32) under § 727(a)(5).

The bankruptcy court turned, finally, to a discussion of the Trustee's assertions under § 727(a)(4). Before analyzing specific alleged omissions, the court outlined its view of the proceedings.

> Trustee Manning has done an exemplary job of analyzing somewhat convoluted—although when broken down not that complicated—financial arrangements by which Cecil Allen Watkins conducted his business activities. The court understands the Trustee's frustration, in that the bankruptcy filings—particularly the Schedules and Statement of Financial Affairs—are hardly a model of completeness. But the record also establishes that Cecil Allen Watkins

provided the Trustee with an extensive amount of documentation regarding his business transactions, although perhaps not in the format and not within the time frames which the Trustee might reasonably have desired. But the fact remains that this debtor did provide the Trustee with an extensive amount of documentation concerning a number of matters involved in his case, including transactions and materials involved with his various corporate or partnership related business entities. The court will also note—because it is worth nothing—that in his testimony, Allen acknowledged making errors in disclosing several matters and in explaining certain matters, with respect to the basic documents filed in his bankruptcy case. This is worth nothing because the court was impressed by Allen's candor in his testimony, and with the fact that the provision of voluminous documentation to the Trustee upon request <u>does</u> and <u>should</u>, have a bearing on a determination of the intent element required under § 727(a)(4).

(Mem. of Decision 32–33.) The court continued with a discussion of bankruptcy policies, adopting a policy to give debtors incentive to provide the fullest disclosure, even through supplemental filings. The court then stated as follows:

> [T]here is a basic underlying premise that permeates the Trustee's case. That premise is that bankruptcy filings—particularly Schedules and Statements of Financial Affairs—are submitted under oath, and that when they are proven to be not entirely accurate, denial of discharge logically follows. That is not the case. The provision which relates to denial of discharge in this context is essentially 11 U.S.C. § 727(a)(4)(A), and that section requires that the "false oath or account" be made "knowingly and fraudulently".

(*Id.* 34.)

Next, the court discussed specific instances in which the Trustee alleged that Allen had violated § 727(a)(4). The court found that Allen did fail to fill out various bankruptcy documents correctly, but did not find denial of discharge to be appropriate in any instance. Specifically, the court found as follows: 1) "Allen did not accurately state information regarding personal accounts required by section 11 of the SOFA and by section 2 of Schedule B, even when one considers the amendment to Schedule B filed by the debtors" (*id.* 38), but the court found that he did not "knowingly and fraudulently" fail to disclose, and that his failure was not material; 2) not

determining whether Allen should have disclosed his interest in certain escrow accounts under the SOFA, the court found that "any failure to do so was not 'knowingly and fraudulently' done" (*id.*); 3) "Allen definitely did not disclose his involvement in certain corporations, both traditional and limited liability corporations, which should have been disclosed, in relation to his involvement in them within six years immediately preceding the commencement of the case" (*id.*), but the court found that the failure to disclose was not knowing and fraudulent, and was not material; 4) "There are failures to disclose existing interests in corporations, which one would expect to find in . . . Schedule B" (*id.* 39), but the court found that "based upon the entire record, the existence of these interests is not material with respect to the administration of this bankruptcy estate" (*id.*), and that Allen's failure to list A Management, LLC—which he testified was owned by another person—was not done knowingly and fraudulently; 5) The debt that HRC owed to Allen "should have appeared in . . . Schedule B, which it did not" (*id.*), but the court found that Allen's listing of the debt in another section, "in conjunction with the record as a whole—convinces the court that the failure to disclose the debt owed by Housing Resource Center, Inc. to Allen Watkins in Schedule B was not 'knowingly and fraudulently' omitted" (*id.* 40).

In conclusion, the bankruptcy court stated that the Watkins bankruptcy case had been "one of the most difficult determinations which the court ha[d] ever been called upon to make." (*Id.*) It reiterated that Allen "failed to disclose items which should have been disclosed in both Schedule B and the Statement of Financial Affairs" (*id.*), and that he therefore made technically false oaths in those documents. The court summed up its holding, however, as follows:

> [T]he failure to make a disclosure under oath, or the failure to make a complete disclosure under oath, in bankruptcy documents will not in and of itself give rise to

a ground for denial of discharge—the failure must be undertak[en] "knowingly and fraudulently". This is true regardless of the cumulative number of failures, if the required intent is not established. The record simply does not establish that Allen Watkins "knowingly and fraudulently" made a false oath with respect to matters involved in this case.

(*Id.*) For all of these reasons, the bankruptcy court denied the Trustee's claims under

§§ 727(a)(2), 727(a)(4), and 727(a)(5), and denied the Complaint for Denial of Discharge.


## STANDARD OF REVIEW

The Federal Rules of Bankruptcy Procedure provide for district court review of final

orders from bankruptcy judges:

On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

Fed. R. Bankr. P. 8013.

A trustee has the burden of proving by a preponderance of the evidence that grounds

exist to deny a discharge under § 727(a). *Stamat v. Neary*, 635 F.3d 974, 978 (7th Cir. 2011).

"[O]bjections to discharge under 11 U.S.C. § 727 should be liberally construed in favor of

debtors and strictly against objectors in order to grant debtors a fresh start." *In re Yonkers*, 219

B.R. 227, 231 (Bankr. N.D. Ill. 1997).

A district court reviews a bankruptcy court's findings of fact for clear error and

conclusions of law de novo. *In re Davis*, 638 F.3d 549, 553 (7th Cir. 2011). Whether a debtor

"possessed the requisite intent is a question of fact, which is subject to the highly deferential

'clearly erroneous' standard of review." *Id.* (citing *Carini v. Matera*, 592 F.2d 378, 380 (7th Cir.

1979)). Under that standard, "'[i]f the bankruptcy court's account of the evidence is plausible in light of the record viewed in its entirety, [a reviewing court] will not reverse its factual findings even if [the reviewing court] would have weighed the evidence differently.'" *In re Resource Tech. Corp.*, 624 F.3d 376, 382 (7th Cir. 2010) (quoting *Freeland v. Enodis Corp.*, 540 F.3d 721, 729 (7th Cir. 2008)). Further, "[a] finding is 'clearly erroneous' when 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Kovacs v. United States*, 614 F.3d 666, 672 (7th Cir. 2010) (quoting *In re Smith*, 582 F.3d 767, 777 (7th Cir. 2009)).

A reviewing court may find clear error "[']even in a finding purportedly based on a credibility determination.'" *In re Chavin*, 150 F.3d 726, 728 (7th Cir. 1998) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985)). Such a finding depends on factors other than the demeanor and inflection of witnesses. Where "[d]ocuments or objective evidence . . . contradict the witness' story," or where "the story itself . . . [is] so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it," such a finding may be appropriate. *In re Chavin*, 150 F.3d at 728.

Finally, "[t]he absence of any supporting authority or development of an argument constitutes a waiver on appeal." *Kramer v. Banc of Am. Secs., LLC*, 355 F.3d 961, 964 n.1 (7th Cir. 2004) (citing *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991)).

**DISCUSSION**

The Trustee argues that the bankruptcy court erred on five different grounds, relating to intent, reckless indifference, required disclosure, materiality, and the proper standard to apply to

11

Debra's disclosures. The Debtors respond that the Trustee's appeal must fail because the bankruptcy court did not clearly err in its factual finding that the Debtors lacked the intent necessary to make out a §§ 727(a)(2) or 727(a)(4) claim, and because the Trustee waived any argument concerning § 727(a)(5) by not raising it on appeal. Because the bankruptcy court did not commit clear error in its factual findings and did not fail to apply the appropriate standard as to intent, and because the Trustee has waived any argument under § 727(a)(5), the Court will affirm the decision of the bankruptcy court and deny the Trustee/Appellant's appeal.

A.    § 727(a)(2)(A) and (B)

In his Appellant's Brief, the Trustee asserts that denial of discharge is appropriate under § 727(a)(2)(A) and (B). Although he references § 727(a)(2) generally, the Trustee only makes one clear reference to § 727(a)(2) as it relates to the facts of this case, instead focusing most of his argument on § 727(a)(4). It appears, however, that the Trustee is arguing that the Debtors: 1) with intent to defraud,[2] transferred, removed, or concealed their own property within one year before filing the bankruptcy petition in violation of § 727(a)(2)(A); and 2) with intent to defraud, transferred, removed, or concealed property of the estate after filing the bankruptcy petition in violation of § 727(a)(2)(B). The Debtors insist that the bankruptcy court did not clearly err in finding that they lacked the intent to defraud under § 727(a)(2). The Court agrees that the Trustee has not shown clear error, and it will affirm the decision of the bankruptcy court with respect to § 727(a)(2).

_____

[2]As the Debtors note, although § 727(a)(2) contemplates an intent to "hinder, delay, or defraud," the Trustee has only alleged that the Debtors acted with an intent to defraud. The Court will, accordingly, address only the intent to defraud under § 727(a)(2).

12

The Trustee's only specific argument concerning § 727(a)(2) is the following: "As a matter of law, the Debtors' full payment of the undisclosed shareholder loan by fall of 2009 (6 months after filing bankruptcy) was a violation of 11 U.S.C. [§] 727(a)(2)(A and B)." (Appellant's Br. 14, ECF No. 7.) It is undisputed that at the time the Debtors filed for bankruptcy, HRC owed Allen $266,326.00, which Allen had loaned to the company. Allen did not list this amount as a debt owed to him in his bankruptcy filings. However, he did list as income $8,959.00 per month as income from "[m]oney being paid back from loan to Housing Resource Center." (Mem. of Decision 40.) It is also undisputed that by the fall of 2009, HRC paid this debt back to Allen, but the Trustee was unable to recover this amount on behalf of the estate. The bankruptcy court analyzed this omission in the context of § 727(a)(4), finding that "in conjunction with the record as a whole . . . the failure to disclose the debt owed by Housing Resource Center, Inc. to Allen Watkins in Schedule B was not 'knowingly and fraudulently' omitted." (*Id.*) The Trustee's argument is now that the failure to list the $266,326.00 debt amounted to concealing $266,326.00 of assets with the intent to defraud under § 727(a)(2). For the same reasons the bankruptcy court rejected the Trustee's argument under § 727(a)(4), it fails under § 727(a)(2). Allen did not conceal the debt owed to him by HRC at all. Indeed, he listed it as part of his bankruptcy filing. He failed to list it in the correct way, or in the correct place. But he did not conceal it. Further, the record as a whole shows that he did not omit the $266,326.00 debt amount from an intention to defraud. If he had intended to defraud, he would not have notified the Trustee that he was receiving $8,959.00 per month as income from a loan that HRC was paying back to him. The bankruptcy court found that "no basis to deny Allen's discharge pursuant to 11 U.S.C. § 727(a)(2)(A) or (B) has been established." (Mem. of Decision 31.) As to

the Trustee's specific argument that the shareholder loan repayment to Allen after he filed for bankruptcy violated § 727(a)(2), the bankruptcy court found, generally, that any payment to or on behalf of the Debtors from any of Allen's business entities after filing of the bankruptcy petition "was done in what the debtor/debtors viewed as the ordinary course of operation of Allen's business 'empire', as the Trustee at one point in the trial termed it." (*Id.*) Thus, the Trustee failed to show that the Debtors intended to defraud when any transfers occurred subsequent to the filing of the bankruptcy petition, and the bankruptcy court accordingly refused to deny discharge under § 727(a)(2). The Court agrees with the Debtors that the Trustee has failed to show clear error in the bankruptcy court's § 727(a)(2) findings. The Court is not left with a definite and firm conviction that a mistake has been made. *See Kovacs*, 614 F.3d at 672. Indeed, giving due regard to the opportunity of the bankruptcy court to judge the credibility of the witnesses, *see* Fed. R. Bankr. P. 8013, the Court does not even find that it would have weighed the evidence differently, *see In re Resource Tech. Corp.*, 624 F.3d at 382.

The Trustee's other argument under § 727(a)(2) appears to be that Allen transferred, removed, or concealed assets prior to bankruptcy by moving them from one corporate account to another corporate account to shield them from an IRS tax levy against his personal tax liability, and that he did so with an intent to defraud under § 727(a)(2). The bankruptcy court examined this claim in its Memorandum of Decision, finding that "taking steps to shield personal assets from collection by not maintaining a bank account in an individual name is not in and of itself fraudulent—there is no requirement in any law that an individual has to establish a bank account in a manner which allows collection by a creditor." (Mem. of Decision 30.) Thus, Allen's efforts to prevent the IRS from collecting taxes from a corporation to satisfy his personal tax liability established "no ground for denial of discharge" under § 727(a)(2). (*Id.* 31.) The Court finds that

the Trustee has failed to show clear error in the bankruptcy court's treatment of this issue. Allen's attempt to prevent the IRS from collecting personal taxes from a corporation does not evidence the intent to defraud necessary under § 727(a)(2), and the Court is not left with the definite and firm conviction that the bankruptcy court erred on this point.

For the reasons discussed, the Court will deny the Trustee's appeal with respect to denial of discharge under § 727(a)(2).[3]

**B. § 727(a)(4)(A)**

The Trustee's primary arguments relate to his allegations under § 727(a)(4). He alleges that the bankruptcy court clearly erred in finding that statements by Allen and Debra in their bankruptcy filings:[4] were not false; or were not made "knowingly and fraudulently"; or were not material statements. The Debtors argue that none of the bankruptcy court's § 727(a)(4) findings

---

[3]At one point in his Appellate Brief, the Trustee suggests that Allen's transfer of $7,661.00 to A Management, LLC, on the same date he filed his bankruptcy petition constitutes criminal, "knowing and fraudulent" material concealment under 18 U.S.C. § 152. (Appellate Br. 26–27.) As the Debtors note, however, the Trustee did not seek denial of discharge on the basis of criminal concealment, and "when an issue was not raised in the bankruptcy court, a finding that the issue is waived at the district court level is the correct result, since to find otherwise would permit a litigant simply to bypass the bankruptcy court." *In re Sokolik*, 635 F.3d 261, 268 (7th Cir. 2011) (quotation marks omitted). Courts should only grant an exception to this rule under "exceptional circumstances," *id.*, and the Trustee has presented no such circumstances. Accordingly, to the extent the Trustee argues that the Debtors engaged in criminal material concealment, the Court finds that such argument is waived. Further, even if the Court were to reach the merits of such an argument it would find that the bankruptcy court was not clearly erroneous in finding that the transfer of which the Trustee complains occurred in the ordinary course of his business, and that it was also not clearly erroneous in finding that Allen did not transfer funds on the date of filing his bankruptcy petition with the intent to materially conceal assets.

[4]The Debtors also made statements under oath at the § 341 meeting of creditors. But the bankruptcy court noted that the Trustee did not produce a transcript of the § 341 meeting, and the court was therefore unable to analyze the testimony at that meeting. Further, the bankruptcy court found that "the Trustee did not assert any direct issue concerning Allen's § 341 testimony, which leads to the inference that Allen was cooperative and truthful at that examination." (Mem. of Decision 34 n.8.) The Trustee has not challenged the bankruptcy court's finding on this point; accordingly, the Court will discuss the Debtors' allegedly false statements in the bankruptcy filings but not at the § 341 meeting.

were clearly erroneous. The Court agrees that the Trustee has not shown clear error, and it will affirm the decision of the bankruptcy court with respect to § 727(a)(4).

Although the Trustee does not discuss each element of a § 727(a)(4) claim, the Court will analyze his arguments by proceeding through the elements as outlined by the Seventh Circuit. To prevail on a § 727(a)(4) claim, a trustee must prove by a preponderance of the evidence that: "(1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case." *Stamat*, 635 F.3d at 978–79 (citing, *inter alia*, *In re Duncan*, 562 F.3d 688, 695 (5th Cir. 2009)).

1.      The Debtors Made Statements Under Oath.

As discussed above, the Debtors made statements under oath in their bankruptcy filings and amended filings, and at the § 341 meeting of creditors. The Debtors admit that they made statements under oath, and that the first element for denial of discharge under § 727(a)(4) has been established.

2.      The Debtors Made False Statements.

As the Debtors note in their Brief of Appellees, "[w]hether the [d]ebtors made a false oath within the meaning of § 727(a)(4)(A) is a question of fact." *In re Yonkers*, 219 B.R. at 232. However, the Court disagrees with the Debtors in their analysis of this point. The Debtors argue that even though the bankruptcy court found that their initial filings were deficient, it also found that their "supplementations and testimony subsequent to filing the petition corrected these deficiencies" (Br. of Appellees 11, ECF No. 12) and that "statements made by Mr. and Mrs.

Watkins were not false, under the totality of the circumstances" (*id.* 12). The Court finds that the Debtors have misread the bankruptcy court's Memorandum of Decision. In fact, in spite of the Debtors' supplemental filings, the bankruptcy court found that several omissions and misstatements remained. (*See, e.g.*, Mem. of Decision 38 ("The record establishes that Allen did not accurately state information regarding personal accounts required by section 11 of the SOFA and by section 2 of Schedule B, even when one considers the amendment to Schedule B filed by the debtors.").) Accordingly, the bankruptcy court found that Allen "failed to disclose items which should have been disclosed in both Schedule B and the [SOFA]" and that he "technically made a 'false oath' with respect to those documents." (Mem. of Decision 40.) The Court found that some of the Debtors' false statements were not material, and that they did not make any false statements with the intent required under § 727(a)(4). But the Debtors are incorrect in arguing that the bankruptcy court made factual findings that they did not make false statements. The bankruptcy court found that they did make false statements in their bankruptcy filings, thus satisfying the second element of a § 727(a)(4) claim.[5]

3.      The Debtors Did Not Knowingly and Fraudulently Make False Statements.

The third and fourth elements under § 727(a)(4) require a showing that the Debtors knew their statements were false when they made them, and that they made them fraudulently. The

---

[5]The Trustee also argues that the bankruptcy court erred as a matter of law by finding that the Debtors did not need to disclose certain corporate assets in their bankruptcy filings. The Trustee cites to the Seventh Circuit's decision in *Stamat*. It is unclear that any portion of *Stamat*, which was decided before trial in this matter and which the bankruptcy court cited in its Memorandum of Decision, would undermine the bankruptcy court's findings with respect to disclosure in this case. Even if the Trustee had shown that the bankruptcy court was incorrect in one or more of its findings concerning disclosure, it would not alter this Court's conclusion that the bankruptcy court did not clearly err with respect to the intent necessary to substantiate a claim under § 727(a)(4).

Trustee's primary argument is that the bankruptcy court erred concerning the Debtors' reckless disregard for the truth in their bankruptcy filings, and whether such a reckless disregard substantiates a fraudulent intent under § 727(a)(4). The Trustee argues, first, that the bankruptcy court erred as a matter of law by not applying the reckless indifference standard as articulated by the Seventh Circuit in *Stamat*. In the alternative, the Trustee argues, second, that if the bankruptcy court did apply the reckless indifference standard, then its factual finding that the Debtors did not evidence the intent necessary to deny a discharge under § 727(a)(4) was clearly erroneous. The Court will address these arguments in turn.

Concerning the intent to defraud, "a showing of reckless disregard for the truth is sufficient to prove fraudulent intent." *Stamat*, 635 F.3d at 982 (citing, *inter alia*, *In re Chavin*, 150 F.3d at 728, and *In re Duncan*, 562 F.3d at 695). A finding of fraudulent intent "may be based on inferences drawn from a course of conduct" and "may also be inferred from all of the surrounding circumstances." *In re Yonikus*, 974 F.2d 901, 905 (7th Cir. 1992). Furthermore, "the cumulative effect of false statements may, when taken together, evidence a reckless disregard for the truth sufficient to support a finding of fraudulent intent." *In re Duncan*, 562 F.3d at 695.

First, it appears that the bankruptcy court did apply the reckless indifference standard. As the Trustee admits, the bankruptcy court began its Memorandum of Decision by outlining the legal standards governing § 727(a) claims, including claims under § 727(a)(4). For example, the bankruptcy court stated: "If a debtor's bankruptcy schedules reflect a reckless indifference to the truth then the party seeking denial of the discharge need not offer any further evidence of fraud." (Mem. of Decision 11 (quoting *In re Yonkers*, 219 B.R. at 233 (internal quotation marks omitted)).) The bankruptcy court also stated that "a showing of reckless disregard for the truth is sufficient to prove fraudulent intent." (Mem. of Decision 12 (quoting *Stamat*, 635 F.3d at 982).)

18

The Trustee argues that the bankruptcy court failed to apply this standard, however, and points to the following language from the court's Memorandum of Decision:

> The record establishes that Allen Watkins failed to disclose items which should have been disclosed in both Schedule B and the Statement of Financial Affairs. Due to that failure, he technically made a "false oath" with respect to those documents. However, as previously discussed, the failure to make a disclosure under oath, or the failure to make a complete disclosure under oath, in bankruptcy documents will not in and of itself give rise to a ground for denial of discharge—the failure must be undertak[en] "knowingly and fraudulently". *This is true regardless of the cumulative number of failures, if the required intent is not established.* The record simply does not establish that Allen Watkins "knowingly and fraudulently" made a false oath with respect to matters involved in this case.

(Mem. of Decision 40 (emphasis added).) The Trustee argues that the language above shows that the bankruptcy court abandoned the reckless indifference standard by stating that the cumulative number of failures does not establish the knowing and fraudulent intent required to substantiate a § 727(a)(4) claim. The Court disagrees.

The bankruptcy court clearly stated the appropriate standard under § 727(a)(4). As the bankruptcy court stated, "a showing of reckless disregard for the truth is sufficient to prove fraudulent intent." *Stamat*, 635 F.3d at 982. But while "the cumulative number of false statements may, when taken together, evidence a reckless disregard for the truth sufficient to support a finding of fraudulent intent," *In re Duncan*, 562 F.3d at 695, the Trustee points to no authority stating that a large number of omissions and false statements *must* amount to a reckless disregard for the truth. The Seventh Circuit in *Stamat* analyzed the difference between making omissions and errors negligently and making them with a reckless disregard for the truth. *Stamat*, 635 F.3d at 982. Here the bankruptcy court found that the Debtors' cumulative number of omissions and errors did not establish the knowing and fraudulent intent necessary to substantiate denial of discharge under § 727(a)(4). Implicitly, the bankruptcy court found that the

Debtors' omissions and errors did not demonstrate a reckless disregard for the truth, which would have established a knowing and fraudulent intent. Accordingly, it appears the bankruptcy court did apply the reckless indifference standard.

Second, the bankruptcy court did not clearly err in its finding that the Debtors' omissions and errors did not show a reckless disregard for the truth. As noted above, this Court must give "due regard" to "the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. R. Bankr. P. 8013. Further, the Court's clearly erroneous standard of review for bankruptcy findings of fact is "a well-established rule of law rooted on the reasonable thesis that a trial judge is best able to appreciate the nuances of demeanor and evidentiary content that go into determinations of the credibility of witnesses." *In re Martin*, 698 F.2d 883, 885 (7th Cir. 1983). A bankruptcy judge is "in a unique position to form judgments about what actually may, or may not, have happened." *Id.* at 886. *See also In re Yonikus*, 974 F.2d at 905–06 (trier of fact considers the "whole pattern of conduct" and the witness's demeanor when answering questions (quotation marks omitted)). In this case, the bankruptcy court found Debra's testimony about her lack of involvement in Allen's business affairs to be "clear and convincing." (Mem. of Decision 20.) Further, the bankruptcy court "was impressed by Allen's candor in his testimony." (*Id.* 33.) The bankruptcy court distinguished the Debtors' case from others the court had previously decided in which debtors "essentially thumbed [their] nose[s] at the court and thereby evidenced the intent to thwart creditors, or a trustee, or the court." (*Id.* 40.)

The bankruptcy court's findings were not clearly erroneous. The bankruptcy court was in a unique position to form judgments about what actually happened when the Debtors filed for bankruptcy. After two days of trial, after taking the matter under advisement for a number of months, after analyzing numerous individual omissions and errors by the Debtors, and after

penning a forty-one page opinion, the bankruptcy court determined that Allen and Debra did not

show a reckless indifference to the truth sufficient to substantiate a knowing and fraudulent

intent under § 727(a)(4). The Trustee urges that so many omissions and errors, some of which

represented substantial dollar amounts, must evidence reckless indifference. But after managing

this case for years, the trier of fact determined otherwise. The bankruptcy court noted that this

was "one of the most difficult determinations" it had ever made. (*Id.* 40.) No authority cited by

the Trustee mandates a finding of a reckless indifference to the truth based on a large number of

omissions or errors. Instead, a large number of omissions or errors *may* establish a reckless

indifference to the truth, which does satisfy the intent element for a § 727(a)(4) claim. *See In re*

*Retz*, 606 F.3d 1189, 1199 (9th Cir. 2010) ("the significant number of falsehoods and omissions,

together with the failure to amend the Schedules and SOFA in the three years between the

petition and trial, <u>can</u> constitute reckless indifference to the truth, which is evidence of

fraudulent intent.") (emphasis added); *In re Koss*, 403 B.R. 191, 213 (Bankr. D. Mass. 2009)

("reckless disregard <u>may</u> . . . be found based on the cumulative effect of a series of innocent

mistakes") (quotation marks omitted) (emphasis added). *See also In re Donahue*, No. 11-026,

2011 WL 6737074, at *12 (B.A.P. 1st Cir. Dec. 20, 2011) ("courts <u>may</u> look to circumstantial

evidence and draw inferences from a course of conduct to establish that a debtor acted with

fraudulent intent") (emphasis added); *In re Yonikus*, 974 F.2d at 905 ("fraudulent intent <u>may</u> also

be inferred from all of the surrounding circumstances") (emphasis added). The bankruptcy court

could have found that the number and scope of the omissions and errors by the Debtors

constituted a reckless indifference to the truth of their bankruptcy filings which would have

substantiated a claim under § 727(a)(4). But based on its close evaluation of the witnesses and all

the evidence, the bankruptcy court determined that the Debtors were not recklessly indifferent to

the truth of their filings. Given this Court's deference to the bankruptcy court's opportunity to judge witness credibility, the Court is not left with the definite and firm conviction that a mistake has been committed. *Kovacs*, 614 F.3d at 672. Accordingly, the Court will affirm the bankruptcy court's finding of fact on this point.

The Trustee cites *In re Chavin*, 150 F.3d 726 (7th Cir. 1998), for the proposition that demeanor and credibility determinations by a finder of fact may be refuted by evidence that is contrary to in-court determinations concerning witnesses. The Trustee's reliance on *Chavin* is misplaced. In *Chavin*, the trustee sought denial of a bankruptcy discharge because of fraud under §§ 727(a)(2) and 727(a)(4). The bankruptcy court granted summary judgment in favor of the trustee, and the district court affirmed. The Seventh Circuit affirmed the decision to deny discharge on a motion for summary judgment in spite of the usual practice of sending §§ 727(a)(2) and 727(a)(4) claims to trial. The *Chavin* court stated that "[a] denial of knowledge may be so utterly implausible in light of conceded or irrefutable evidence that no rational person could believe it; and if so, there is no occasion to submit the issue of knowledge to determination at a trial." *Id.* at 728. Chavin was "a mature and experienced businessman who on the eve of bankruptcy had properties worth millions of dollars." *Id.* at 729. Finding that "[t]he questions [Chavin] claims not to have understood were not esoteric, and his explanations for his failure to answer them correctly [we]re ridiculous," *id.*, the Seventh Circuit held that in no instance "could a reasonable person believe Chavin's stated reason for his false representation or omission." *Id.*

The Trustee insists that, as in *Chavin*, no reasonable person could possibly believe the Debtors' explanations for their omissions and errors on their bankruptcy filings. But the Court finds that the facts of the Debtors' case do not place it in the "exceptional category" of *Chavin*, *id.*, where a determination as to intention was appropriate in lieu of in-court findings of fact.

Nothing suggests that Allen and Debra's failure to correctly answer questions in the bankruptcy Schedules and SOFA was "ridiculous." Allen and Debra were not sophisticated businesspersons failing to disclose over a million dollars of income in their bankruptcy. Allen and Debra did make efforts to supplement their bankruptcy filings upon request, whereas Chavin made no efforts to correct his deficient filings. As the bankruptcy court found concerning the Debtors, Allen's business model was "somewhat convoluted—although when broken down not that complicated." (Mem. of Decision 32.) In his Reply, the Trustee argues that "not caring whether some representation is true or false . . . is . . . the equivalent of knowing that the representation is false and material." *Chavin*, 150 F.3d at 728. But the bankruptcy court was impressed with Allen's candor at trial, and with the extensive documentation he provided the Trustee. The bankruptcy court did not find that Allen lacked concern about whether his representations were true or false. Consequently, the Trustee's reliance on *In re Herchakowski*, No 10-49287, 2013 WL 620291, at *5 (Bankr. D.N.J. Feb. 19, 2013) (granting a § 727(a)(4) claim where the court found that a debtor did not care whether his statements in bankruptcy filings were true or false), is unavailing. Moreover, the case of *In re Taylor*, 461 B.R. 420 (E.D. Mich. 2011), is also distinguishable because in *Taylor* the debtor was a lawyer who had been practicing for thirteen years and who was "not an unsophisticated debtor," *id.* at 423. By contrast, Allen was a self-taught real estate broker. The *Taylor* debtor made no effort to amend his bankruptcy filings to correct his errors, whereas Allen filed amended documentation before trial.

The Trustee has failed to show that no reasonable finder of fact could possibly believe that the Debtors lacked the intent necessary to substantiate denial of discharge under § 727(a)(4). Accordingly, the Court distinguishes the extreme circumstances of *Chavin*, finds that the holding from *Chavin* does not suggest that the bankruptcy court's § 727(a)(4) findings in this case were

clearly erroneous, and distinguishes cases like *Herchakowski* and *Taylor* on their facts.[6]

The Trustee also argues that the bankruptcy court clearly erred in finding Debra "exonerated" on the § 727(a)(4) claim because Allen was the one "responsible for preparing and certifying to the accuracy of the documents filed in [the] case." (Mem. of Decision 40 n.11.) The Trustee argues that Debra should have been more aware of what she was signing. He asserts that, at least by the time she filed the amended Schedule B, Debra should have known to properly verify the accuracy of the document, and that her failure to do so constituted a reckless disregard for the truth amounting to knowing and fraudulent behavior under § 727(a)(4). Thus, the Trustee argues that the bankruptcy court's finding to the contrary was clear error. The Debtors respond that the bankruptcy court appropriately found that Debra had no involvement in Allen's business affairs, except occasional maintenance on the properties. Accordingly, the Debtors argue, she could not have knowingly and fraudulently filed bankruptcy paperwork. The Court agrees that the Trustee has failed to show that the bankruptcy court clearly erred in its findings with respect to Debra's discharge.

"Acceptable excuses for failure to maintain sufficient business records are lack of sophistication with regard to business matters, the debtor's subordinate role in the business operation, and that the debtor is an innocent spouse who relied on the other spouse for record keeping." *In re Goodman*, 227 B.R. 626, 631 (Bankr. E.D. Pa. 1998) (quoting *In re Blanchard*, 201 B.R. 108, 123 (Bankr. E.D. Pa. 1996)). Further, "a spouse may be innocent when he or she

---

[6]The Court also distinguishes *Cannon-Stokes v. Potter*, 453 F.3d 446, 448 (7th Cir. 2006), in which the Seventh Circuit stated that it was "impossible to believe" a sizeable claim was overlooked when a debtor filed for bankruptcy. It is not impossible to believe the Debtors would have filed their bankruptcy schedules in the way they did, and in the case of the $266,326.00 loan to HRC, they did not overlook it at all. They listed it in the wrong place, and in the wrong way. Thus, the Trustee's citation to *Cannon-Stokes* also does not disturb the Court's holding that the bankruptcy court did not clearly err with respect to § 727(a)(4).

relies on the other spouse for maintaining the books and records." *In re Tanglis*, 344 B.R. 563, 571 (Bankr. N.D. Ill. 2006). However, when a spouse who has no involvement with her husband's business dealings fails to accurately document her own financial affairs, a court may deny her discharge on that basis. *Id.* at 572.

The bankruptcy court found that Debra was exonerated because she was an innocent spouse with no knowledge of her husband's financial affairs. This factual finding is supported by the record and not clearly erroneous. Further, the Trustee does not suggest that Debra accumulated her own debts or failed to document her own financial affairs as in *Tanglis*. At least three different times at trial, Debra referred to her confusion regarding her husband's business. She also stated that going through his paperwork in an attempt to independently verify the filings she was signing would have been overwhelming to her, and would not have helped. (Oct. 28, 2011, Hr'g Tr. 284:18–24, ECF No. 8-1 at 000382.) She clearly relied upon Allen for record keeping, *In re Goodman*, 227 B.R. at 631, and depended on his judgment in filling out the bankruptcy filings. The Trustee argues that on the eve of trial she should have taken a closer interest in fact-checking her husband's documentation. But the bankruptcy court found that Debra was a stay at home mom with no working knowledge of her husband's business activities, and she testified to her confusion where such matters were concerned. The bankruptcy court's finding that a discharge was appropriate was not clearly erroneous. The bankruptcy court had the opportunity to evaluate Debra's demeanor and found that she had no intent to defraud. Further, a spouse who relies on her husband's business acumen is not acting recklessly or being indifferent to the truth of her statement, even when she is signing an amended document prepared for her by her husband. The court is not left with the definite and firm conviction that a mistake has been committed. Accordingly, the Court will affirm the bankruptcy court's findings with respect to

Debra under § 727(a)(4).

4.      Some of the Debtors' False Statement Were Not Material.

Under the fifth and final element of a § 727(a)(4) claim, the Trustee must establish that

the Debtors made a false statement that "related materially to the bankruptcy case." *Stamat*, 635

F.3d at 978. Materiality is a mixed question of law and fact. *McGrath v. Zenith Radio Corp.*, 651

F.2d 458, 466 (7th Cir. 1981). It involves assessments that are "['peculiarly ones for the trier of

fact.'" *Id.* (quoting *TSC Indus., Inc. v. Norhway, Inc.*, 426 U.S. 438, 450 (1976)). "The scope of

appellate review, therefore, is limited: only where reasonable minds cannot differ on the issue of

materiality may a court determine the issue as a matter of law." *McGrath*, 651 F.2d at 466. The

Trustee argues that "'the threshold to materiality is fairly low,'" *In re Sullivan*, 455 B.R. 829,

839 (B.A.P. 1st Cir. 2011) (quoting *In re Sears*, 246 B.R. 341, 347 (B.A.P. 8th Cir. 2000)), and

that the bankruptcy court clearly erred in finding that the Debtors' omissions and errors did not

rise to the level of materiality. The Debtors argue that "the Bankruptcy Court did not find any of

Debtors' inaccuracies or inadvertent omissions rose to the standard of materiality." (Br. of

Appellees 20, ECF No. 12.)

The Court agrees with the Debtors that the Trustee has failed to show that the bankruptcy

court clearly erred in any of its materiality findings. The bankruptcy court found many of the

Debtors's omissions and errors did not rise to the level of materiality under § 727(a)(4). In other

cases, the bankruptcy court did not address the issue of materiality. Given the bankruptcy court's

finding that the Debtors did not knowingly and fraudulently take any action under § 727(a)(4),

and this Court's conclusion that the bankruptcy court did not clearly err on that point, the Court

finds no clear error in the bankruptcy court's treatment of the issue of materiality under

§ 727(a)(4). In no instance has the Trustee demonstrated that reasonable minds cannot differ on the issue of materiality, *McGrath*, 651 F.2d at 466, and the Court is not left with the definite and firm conviction that a mistake has been committed.[7] Accordingly, the Court will uphold the bankruptcy court's findings on materiality under § 727(a)(4).

5.      The Debtors Did Not Violate § 727(a)(4).

Having analyzed the elements necessary to substantiate a claim under § 727(a)(4), the Court finds that although the Trustee established that the Debtors made false statements under oath, he failed to establish that the Debtors knowingly and fraudulently made any false statements under oath, or that any of their false statements under oath related materially to the bankruptcy. Thus, the bankruptcy court did not clearly err in denying the Trustee's § 727(a)(4) claim.

C.      **§ 727(a)(5)**

Finally, the Trustee asserts that the Debtors violated § 727(a)(5). However, the Trustee makes no specific allegation under 11 U.S.C. § 727(a)(5), which allows for denial of discharge

---

[7]Further, the Court agrees with the Debtors that the cases of *Cannon-Stokes v. Potter*, 453 F.3d 446 (7th Cir. 2006), and *Biesek v. Soo Line Railroad Co.*, 440 F.3d 410 (7th Cir. 2006), cited by the Trustee in a different section of his brief, do not disturb the Court's materiality analysis. Both *Cannon-Stokes* and *Biesek* involved debtors who omitted reference to legal claims in their bankruptcy petitions, received bankruptcy discharges, and later sued on the claims they declined to mention. In both cases, the Seventh Circuit found the debtors could not realize gain on legal claims the debtors purposely overlooked in their bankruptcy petitions. The debtor in *Cannon-Stokes* was attempting to "scam [her] creditors." *Cannon-Stokes*, 453 F.3d at 448. The Seventh Circuit found that the "lie" in *Biesek* "could not have been inadvertent." *Biesek*, 440 F.3d at 411. But the record does not show, and the bankruptcy court did not find, that Allen and Debra had the same intentions. Moreover, as discussed in a previous footnote, it is not "impossible to believe" that the Debtors could have overlooked the omissions in their filings, *see Cannon-Stokes*, 453 F.3d at 448, and so any materiality argument based on *Cannon-Stokes* or *Biesek* fails because of the different facts in those cases.

where "the debtor has failed to explain satisfactorily, before determination of denial of discharge . . . any loss of assets or deficiency of assets to meet the debtor's liabilities." The Debtors argue that the Trustee has waived any argument under § 727(a)(5) on appeal by not developing an argument or citing any authority. *See Kramer*, 355 F.3d at 964 n.1 ("The absence of any supporting authority or development of an argument constitutes a waiver on appeal."). The Debtors are correct. The Trustee has waived any argument relating to § 727(a)(5).

Moreover, even were the Court to consider § 727(a)(5), it would find that the bankruptcy court did not clearly err on this issue. The bankruptcy court found that "the record fails to establish any loss of assets or deficiency of assets to meet the debtors' liabilities which has not been satisfactorily explained." (Mem. of Decision 32.) The Trustee did not even attempt to show that this finding by the bankruptcy court was clear error, and the Court would uphold the bankruptcy court's finding on this point if the Trustee had not waived the issue.

**D.     The Debtors' Equity Argument**

In their Brief of Appellees, the Debtors argue that "it remains within the discretion of a bankruptcy court to grant a discharge even when grounds for denial of discharge are demonstrated to exist." *Union Planters Bank, N.A. v. Connors*, 283 F.3d 896, 901 (7th Cir. 2002) (quotation marks omitted). Because "exceptions to discharge are to be construed strictly against a creditor and liberally in favor of the debtor," *Stamat*, 635 F.3d at 979 (quotation marks omitted), the Debtors insist that the bankruptcy court correctly determined that discharge was appropriate in their case. The Trustee responds that although "[t]he general rule is that the right to a discharge is left to the sound discretion of the bankruptcy court, and that an appellate court will not interfere with the decision of a bankruptcy court to grant a discharge unless there is a

28

gross abuse of discretion," *In re Suttles*, 819 F.2d 764, 766 (7th Cir. 1987) (citation and quotation marks omitted), nevertheless the Seventh Circuit has not decided "whether the bankruptcy court's discretion to grant a discharge under a subsection of § 727 that requires fraudulent intent is as broad," *id.* at 766 n.2. Moreover, a debtor "cannot obtain a discharge . . . if one of the conditions specified by [§ 727(a)] exists." *Disch v. Rasmussen*, 417 F.3d 769, 774 (7th Cir. 2005) (specifically listing §§ 727(a)(2), 727(a)(3), and 727(a)(5)).

The Court finds that it need not reach the Debtors' equity argument. Because the Court has already found that it should affirm the bankruptcy court's findings with respect to §§ 727(a)(2), 727(a)(4), and 727(a)(5), it need not address whether the bankruptcy court would have had discretion in equity to grant discharge in spite of a finding of intent under § 727(a). The bankruptcy court's ruling was based on the Trustee's failure to meet his burden under § 727(a), not on equitable principles.

The Trustee argues the bankruptcy court's attempt to encourage debtors to supplement their bankruptcy filings rather than disallowing amendments runs afoul of the Seventh Circuit's holding in *Village of San Jose v. McWilliams*, 284 F. 3d 785 (7th Cir. 2002). In *McWilliams*, a § 727(a)(2) case, the Seventh Circuit reversed a bankruptcy judge's decision to grant discharge to debtors who initially concealed property but later provided full disclosure, rectified their infraction, and ensured that their creditors were not harmed. *Id.* at 790. Noting that the debtors were "certainly unfortunate debtors," the court found that they were "not exactly honest debtors either." *Id.* at 794. Because of the plain language of the code, the Seventh Circuit found discharge inappropriate in spite of the debtors' "attempts to remedy the fraud by disclosing the transfers and reconveying the property after they filed for bankruptcy." *Id.*

The Court finds *McWilliams* distinguishable for a very simple reason. Whereas the

*McWilliams* debtors intentionally concealed property in their bankruptcy filings in violation of § 727(a)(2), the bankruptcy court found that Allen and Debra lacked the intention to defraud necessary to substantiate a claim under any paragraph of § 727(a). Further, the bankruptcy court was aware of § 727(a) cases "in which initial bankruptcy filings evidence violations . . . , and no matter what a debtor may subsequently do, the initial 'bad act' cannot be undone." (Mem. of Decision 34.) But as the bankruptcy court held, "[t]his isn't one of those cases." (*Id.*)

The Court need not reach the Debtors' equity argument for the reasons listed above. Nor is the Court's affirmation of the bankruptcy court disturbed by the Trustee's citation to *McWiliams*. The bankruptcy court did not adopt an equitable policy out of line with Seventh Circuit caselaw in its statements concerning the need to encourage debtors to fully disclose through amendments. Rather, the bankruptcy court recognized that where a trustee does not show an intention to defraud sufficient to substantiate claims under any portion of § 727(a), a bankruptcy court should encourage full disclosure through amendment.

## CONCLUSION

For all the reasons discussed above, the Court AFFIRMS the bankruptcy court's Memorandum of Decision Concerning Action to Deny Discharge dated July 6, 2012, pursuant to Federal Rule of Bankruptcy Procedure 8013 and 28 U.S.C. § 158(a)(1).

SO ORDERED on July 31, 2013.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION